*A. S. Way,* for plaintiff.

CITIZENS AND SOUTHERN BANK *v.* SEIGLER *et al.;*
*et vice versa.*

# 658

*Paul T. Chance,* for plaintiff.

*J. P. Stephens* and *Peebles & Bowden,* for defendants.

Russell, C. J.   On February 14, 1925, Claud T. Burnett sold a house and lot in Augusta to Thomas Randall for $1500, of which Randall paid $250 in cash, and for the $1250 he executed notes payable monthly to Burnett.   A contract of sale was executed by the parties, which contains all the powers and authority usually contained in security deeds.   Burnett transferred the purchase-money notes to the Citizens and Southern Bank, and delivered with them his copy of the contract of sale.   After paying the first six of the monthly installment notes at the bank, Randall abandoned the property and moved to Florida.   Burnett, being the ostensible owner after Randall's abandonment of the premises, sold the property to Sam Sexton, giving him a warranty deed and receiving from him a security deed to the property, dated April 30, 1925, reciting a consideration of $400, payable in monthly installment notes. This deed and the notes which it secured were also transferred by Burnett to the bank on May 13, 1925.   The deed was duly recorded on May 14, 1925.   Thereafter three of the installment notes due by Sexton were paid at the bank, and four of the Randall notes. The bank paid the full value of both the Randall and Sexton notes by advances to Burnett.   On August 20, 1925, Sexton made a security deed to Amanda M. Seigler, reciting a consideration of a loan of $700.   This deed was recorded on August 25, 1925, and on the same day the security deed held by the bank was entered canceled across the face of the record thereof.   The cancellation appears to have been executed by Burnett and witnessed by J. Paul Stephens.   The Citizens and Southern Bank brought an equitable petition to the September term, 1926, of the superior court, based upon the notes transferred to it by Burnett, and prayed that its lien upon said notes and the collateral transferred to secure the same be decreed to be a first lien on the property.   Burnett was named as the principal debtor, and Randall, Sexton, and Mrs. Seigler

were joined as defendants. Personal service was perfected upon each of them except Randall, who had moved to Florida. After service Burnett absconded. In the tenth paragraph of the petition it is alleged that the bank "accepted the said security deed executed by said Randall and Sexton, and the notes therein described from the said Burnett in good faith, not knowing at the time that the said deed covered the same property as that previously sold to the said Randall, and petitioner has never by act or deed ratified said last sale." It is stated in the eleventh paragraph that each of the defendants had notice, actual and constructive, of the rights and equities of the defendant Randall and the petitioner in and to said property and under said bond for title and purchase-money notes, such notice being that of possession in said Randall and record notice. It was prayed that petitioner have a general judgment against Randall, and that service by publication be had upon Randall.

On September 12, 1927, Mrs. Seigler filed a motion to dismiss the petition, because: (1) The petition sets forth no cause of action and no equitable grounds for relief. (2) There has been no service upon Randall, he being an indispensable and necessary party; and no facts are alleged which would authorize a judgment against Burnett or Sexton. (3) The petition is repugnant in essential elements, the fourth paragraph alleging that "for value received the defendant Claud T. Burnett did thereupon transfer to petitioner the said notes by indorsement and the said bond for title by delivery," whereas paragraph three of the petition, alleging that the note attached as exhibit "B," contains the same language, terms, and conditions, whereas exhibit "B" shows no indorsement of said note as alleged in paragraph four. (4) The petition sets forth no cause of action even if said notes were indorsed by Burnett to the plaintiff, inasmuch as it is alleged that said bond for title was transferred only by delivery; and such delivery would not transfer or create any right, title, or interest in the land described in the bond for title, the plaintiff's case being predicated upon the theory that manual delivery of the bond for title conveyed a right or title in and to the land from Burnett to the plaintiff. (5) It appears from the petition that Sexton made a conveyance of the land to Mrs. Seigler on August 20, 1925, and that the bond for title between Burnett and Randall was not recorded prior to the conveyance by Sexton to Mrs. Seigler, and that at no time said bond

for title from Burnett to Randall has been transferred or assigned to the plaintiff. (6) There is no allegation that plaintiff accepted the Sexton notes and security deed without knowledge that the Sexton deeds covered the same property previously conveyed by Randall. (7) There is no allegation of any actual constructive knowledge on the part of this defendant of any equities in favor of the plaintiff, and no facts are stated from which the same might be inferred.

In response to this motion the plaintiff filed amendments: (1) By adding to the allegations of paragraph six, relating to the security deed from Sexton back to Burnett and the alleged indebtedness of $400, the statement that said security deed was recorded in the office of the clerk of the superior court of said county on May 14, 1925. (2) By striking from line 2 of paragraph ten the name "Randall," and inserting in lieu thereof the name "Sexton." (3) By alleging that the two conveyances referred to in paragraphs five and six of the original petition represented the consummation of a second attempt to sell said property by Burnett, whereby Sexton agreed to pay therefor $400 (the amount of said security deed) and the outstanding notes of Randall for the balance of the purchase-price; that the security deed executed by Sexton recites that it "is given subject to a security deed in the sum of $1250;" that, except as part of the consideration of said sale, the security deed from Burnett to Sexton was without any consideration; that Mrs. Seigler had actual notice of all of the foregoing facts; that she had constructive notice of plaintiff's first lien of $1250, from the record of said security deed from Sexton to Burnett. These amendments were allowed. A further amendment substituted, in one of the prayers, the name Burnett in lieu of Randall.

. At the appearance term an entry was made upon the docket that the case was in default. The court having allowed these amendments and having denied Mrs. Seigler's motion to dismiss the action, the plaintiff moved for an order striking the answers filed by Mrs. Seigler and Sexton, and for verdict and judgment in favor of the plaintiff. This motion was overruled; and the court allowed the defendants to file their answers, upon the ground that the amendments filed by the plaintiff materially changed the cause of action. Exceptions pendente lite to these rulings were taken by

the plaintiff and by Mrs. Seigler and Sexton. Upon the trial questions of fact were submitted to a jury, who returned a verdict in favor of the plaintiff against Burnett for $1530 principal, and interest; also finding that the attorney for Mrs. Seigler did not have sufficient notice to put a prudent man on inquiry which, if he had diligently followed it up, would have led to the discovery of any rights of the plaintiff; and finding in favor of Mrs. Seigler against Sexton for $700 principal and interest. In answer to the question, "Did Sam Sexton have notice of the rights and interest of the plaintiff in the Thomas Randall notes held by it, or was he in possession of any fact or facts which would have put a prudent man on inquiry which, if he had diligently followed it up, would have led to the rights or interest the plaintiff had in said notes?" there was a finding that Sexton did not have such notice.

The court entered a decree reciting as follows: "The Citizens and Southern Bank having upon the trial of this cause expressly waived and renounced any rights to take any judgment against the defendant Sam Sexton on account of the notes involved in the transaction between Sam Sexton and Claud T. Burnett, described in the security deed from Sam Sexton to Claud T. Burnett, a copy of which is attached to plaintiff's petition, . . and it appearing that there was no service upon the defendant Thomas Randall in said cause, and plaintiff having abandoned its asking a judgment against Thomas Randall, but electing to take a judgment against Claud T. Burnett as the indorser upon said notes, and contending that it was entitled to a first lien for the amount of the said Thomas Randall notes upon lot No. 186, referred to in the contracts attached to plaintiff's petition, and the court having submitted to the jury, as will more fully appear from the verdict of the jury herein: (1) as to whether or not Sam Sexton, purchaser of·lot No. 186, from Claud T. Burnett, purchased same with knowledge of the equities of the plaintiff as the holder of the Thomas Randall notes, and the jury having found by its verdict, in effect, that Sam Sexton was a purchaser from Claud T. Burnett in good faith without notice actual or constructive of the rights of the plaintiff under the Randall notes; and the court having submitted to the jury (2) the question as to whether or not Mrs. Amanda M. Seigler was charged with actual or constructive notice of the equities of the plaintiff in and to said lot No. 186, to

secure her debt owed by said Sam Sexton, set up in her answer, and the jury found in effect, by its verdict, that Mrs. Amanda M. Seigler had no notice actual or constructive of the equities of the plaintiff, the Citizens & Southern Bank, and that she was entitled to a first lien on said property for the amount of her debt owing by the said Sam Sexton," it was thereupon ordered and adjudged: (1) That Mrs. Seigler have judgment against Sexton for the sum of $700 and interest and a first lien superior to the claims of all others upon said lot number 186, as prayed. (2) That Sam Sexton is the owner of said lot except as against the claim of Mrs. Seigler. The plaintiff moved for a new trial. The motion was overruled, and the plaintiff excepted. The grounds upon which the motion is based are hereinafter stated.

■ The ruling in headnote 1, when considered in connection with the statement of facts, requires no elaboration. See Civil Code (1910), § 5652; *Calhoun* v. *Mosley,* 114 *Ga.* 641 (40 S. E. 714); *Lippman* v. *Ætna Ins. Co.,* 120 *Ga.* 247 (47 S. E. 593).

■ The plaintiff's assignments of error based upon exceptions pendente lite raise practically the same question. The motion to direct a verdict, after the court had refused to dismiss the action when the plaintiff had amended the petition, assumed that the defendants had not answered and could not answer. The judge's holding that the cause of action had been materially changed properly prevented him from concurring in this conclusion, and he did not err in allowing the answers of the defendants to be filed.

■ There is no merit in the general grounds of the motion for a new trial. It appears that at the time Mrs. Seigler was considering lending Sam Sexton $700 she employed an attorney to search the record for the purpose of ascertaining the validity of his title. This attorney found a conveyance which was a lien upon the land, and this claim was paid off from the funds advanced by Mrs. Seigler. It was a claim in which the plaintiff had no interest, a deed to a different party. The security deed from Randall to Burnett had been properly recorded, but it was canceled of record by Burnett himself, the deed having been made to him by Randall to secure payment of $1250, the unpaid purchase-price of lot number 186. Even if this was not enough to satisfy a diligent person that Randall's notes which the deed was given to secure had been paid, it would seem that the jury were authorized to find that due

diligence and caution were exercised in the present case, because Mrs. Seigler's attorney testified that he inquired of Burnett as to the whereabouts of the notes, and Burnett informed him that Randall had abandoned his trade and the contract had been rescinded and the notes destroyed; and that, not being satisfied, the attorney had Burnett swear to that statement. In addition to this, the attorney procured from Randall a quitclaim deed to the property upon which his client proposed to lend the money. Questions of diligence are peculiarly for the jury, and it can not be said that the jury were not authorized to find that the sworn explanation of Burnett that the notes had been destroyed was a sufficient compliance with the requirements that such means be used to ascertain every fact with reference to the validity of the title which might be suggested to a diligent man. An officer of the plaintiff bank could not otherwise explain Burnett's possession of the security deed than by the supposition that it was delivered to him by some officer of the bank; and certainly if the action of the bank in delivering its security deed into the possession of Burnett, thereby enabling him to fraudulently enter it canceled, must cause loss to any one, the well-known principle that, where one of two innocent parties must suffer, he who put it within the power of a third person to cause the loss must suffer rather than another who did not contribute in any way to the perpetration of the fraud must be applied in the present case. To the examiner of the title the entry of cancellation was properly entered upon the record and apparently perfectly regular. Ordinarily it would seem that an examination of the record would suffice, unless the person making the examination had knowledge of other facts with relation to the title of the land under investigation than those appearing from the record. As to Sam Sexton's case, there is one outstanding issue of fact which was conclusive: the record of his deed from Burnett shows that he was obliged to know from the very terms of the instrument that his title was subject to a lien of $1250 created by a previous deed, but Sexton swore that at the time the deed was executed and signed by him there was no recital whatever in regard to the $1250 encumbrance. If this entry was made in the deed after its execution, it constituted a forgery and was ineffectual to affect the rights of Sam Sexton. If it was in the deed at the time it was signed, regardless of whether Sam Sexton read it or not, it would bind him.

So the simple question presented to the jury was whether a forgery had been committed; and the jury found that the recital with reference to the $1250 lien was a forgery, as they had the right to do in case they believed the testimony of the witness Sexton.

■ The fourth ground of the motion for a new trial contains a recital of certain testimony given by J. Paul Stephens, a witness for the defendants. There is no assignment of error whatever in this ground. All that can possibly be gathered from it is that there was a conflict as to a material point. As the ground contains no assignment of error, it of course can not be considered.

■ In the fifth ground it is contended that the court illegally admitted the testimony of Sam Sexton, as follows: "Q. Did you ever pay for the property? A. Well, no sir; I never paid for it. Q. How much did you pay on it? A. Well, I paid, I think four hundred and some odd dollars. I think I have the record here that he gave me. I think I left that paper at home—$406 I think it was; that book I was looking for which I left at home has his account that he gave me." The objection to this testimony was that the book entry of any payment was the highest and best evidence, and that the testimony as to such account was improper. We think the court properly overruled the objection and admitted the testimony. The payment or non-payment of money by a person is a fact and can be testified to as such. It is plain from the testimony that the memorandum to which the witness referred and which he was looking for, evidently more for the purpose of corroborating his testimony than anything else, was some writing which had been given to him by Burnett, perhaps a receipt for $406. This receipt is not higher or better evidence than the testimony of the witness who made the payment.

■ The sixth ground complains of the failure of the court properly to answer a question asked by a juror engaged in the trial of the case, as follows: Juror: "I would like to ask a question about this negro that was in here yesterday. Would he be responsible if he signed that paper [security deed] and did not know that this clause was in there, thinking he was signing a paper that did not have the clause in it? In other words"—Court: "This question will decide that. You decide whether he had any notice, either actual or constructive, of the interest of the bank in those notes, and any evidence that has been introduced to you, illustrating

that fact, may be considered by you." Juror: "What I mean is, would he be responsible if he signed the paper, not knowing it was in there?" Court: "If he did not know of the existence of those notes and was not in possession of any fact which, upon inquiry, would have led to the interest of the bank in those notes, you would answer he was not. . . " Without quoting all the statements of this ground, it is sufficient to say that the errors assigned are that what the judge said was not responsive to the inquiry on the point of law involved, and upon which the juror desired to be enlightened; and that the answer was confusing and misleading to the jury, and was an incorrect statement of the law. Conceding that what was said by the judge was not responsive to the question twice repeated by the juror, we find no error for that reason. The juror wanted to know whether Sam Sexton would be responsible if he signed the paper not knowing that the lien of $1250 was referred to therein. Under the pleadings the answer to the question asked by the juror was utterly immaterial. The only issue in the case (it being unquestionably the law that ordinarily one must be presumed to know the contents of an instrument he signs) was whether the statement concerning the lien was in fact in the instrument at the time of its execution. The plaintiff relied upon the presumption that it was contained in the instrument, because that is the general presumption where the signature of a maker to a writing is not denied. Sexton relied upon his statement and his knowledge of the fact that it was actually not in the writing at the time it was executed; and therefore the question asked by the juror could not properly be answered directly by the court without injecting into the case an issue not raised by the parties. Nothing was said by the court which could have confused or misled the jury, nor was it, as contended, an incorrect statement of the law. In what was said by the court he only called the attention of the jury to his previous instructions to the effect that if Sexton did not know of the existence of those notes and was not in possession of any fact which upon inquiry would have led to the interest of the bank in those notes, the jury would answer that he was not, which was in line with his instruction in his original charge, that if the defendants, including Sexton, were in possession of any fact which upon inquiry would have led to the interest of the bank in those notes, they would be affected by whatever might have been dis-

covered by the exercise of ordinary diligence. This is plain by a further statement of the court in attempting to properly confine the jury to the real issues before them, when the court said, "If the darky knew about the interest that the bank had in the Randall notes at the time he took the property, and had either actual or constructive knowledge of it, or was in possession of any facts which would have led him to that conclusion—of the interest of the bank in the notes, then the bank would take the second lien on the property to the extent of those notes ahead of him. If he didn't know about it and wasn't in possession of any facts that would put a diligent man on inquiry which would have led to the bank's interest, then the property would be sold, Mrs. Seigler would have a lien on the property for her interest, and then, after that was paid off, the darky would have the property. That would be fixed in the decree. That is, assuming, just for the sake of illustration, that that should be your verdict. In the case you found for the bank, the property would be sold; the bank would get their money out of it first; what was left, if any was left, would be gotten by Mrs. Seigler to the extent of her loan." For the reasons stated, the exception contained in the sixth ground for a new trial is without merit.

■ In the seventh ground it is insisted that the verdict is contrary to a portion of the charge of the court given by written request of the movant. As frequently held by this court, an assignment of error that the verdict is contrary to the charge of the court amounts to no more than the general assignment that the verdict is contrary to law; and this exception is not meritorious. The charge which it is alleged was disregarded by the jury can not be challenged by the movant, for he requested the instruction. It is sound law; but a review of the evidence convinces us, in passing upon the conflicting issues raised by the pleadings and the evidence, that the verdict is not in conflict with the instruction. To illustrate, the verdict is not incompatible with the instruction to the effect that "the law imputes to a purchaser the knowledge of every fact which appears upon the muniments of title, or which one should inquire after in the investigation of title," as applied to the testimony of attorney Stephens that a deed said to be recorded on May 14, 1925, was not at that time a matter of record. On another branch of the case, the instruction that "if the recorded deed

recites facts and refers to other deeds, even though the other deeds are not on record, it will put you on notice as to that," was not necessarily disregarded by the jury preferring the testimony of Sam Sexton, to the effect that he did not sign the deed as it was recorded, to the testimony as to the nature of the record.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur, except Gilbert, J., disqualified.*